UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
In re:

ALFONSO F. DEBENEDETTO,                              Chapter 13
                                                     Case No.: 10-14103

                               Debtor.
------------------------------------------------------------
In re:

TINA M. HEBERT,                                      Chapter 13
                                                     Case No. 11-10444

                               Debtor.
-----------------------------------------------------------
APPEARANCES:

BARBARUOLO LAW FIRM, PC                              Paula M. Barbaruolo, Esq. and
*Attorneys for Alfonso F. DeBenedetto*               Justin Myers, Esq.
12 Cornell Road
Latham, NY 12110

GUY CRISCIONE, ESQ.                                  Barbara Whipple, Esq.
*Attorney for Tina M. Hebert*                        *Of Counsel*
817 Madison Avenue
Albany, New York 12208

PHILLIPS LYTLE LLP                                   Joshua P. Fleury, Esq.
*Attorneys for American Tax Funding*
Suite 3400
One HSBC Center
Buffalo, New York 14203-2887

Honorable Robert E. Littlefield, Jr., Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

       Currently before the court are the objections of Alfonso F. Debenedetto and Tina M. Hebert (collectively, the "Debtors") to claims filed in their respective cases by American Tax Funding, LLC ("ATF"). At issue is whether ATF, as the purchaser of real property tax liens, is a

1

holder of "tax claims" for purposes of § 511(a)[1] thereby limiting the Debtors' ability to modify the interest rate on ATF's claims.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1) and (2)(B).

## FACTS

On November 2, 2010, the Debtor Alfonso F. Debenedetto filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. His Chapter 13 plan was confirmed on June 24, 2011. Debtor Debenedetto's Schedules A and D indicate that the he is the owner of real property located at 1572 State Street, Schenectady, New York subject to real property tax liens held by ATF.

Debtor Tina M. Hebert filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on February 18, 2011. Her Chapter 13 plan was confirmed on May 26, 2011. Debtor Hebert's Schedules A and E disclose that she is the owner of real property located at 3313 Marie Street, Schenectady, New York, subject to real property tax liens held by the County of Schenectady.

In 2009, the New York State Legislature enacted Chapter 100 of the Laws of 2009 (the "Session Law"), authorizing the City of Schenectady (the "City") to enter into a contract with a private party to sell delinquent tax liens. Act of July 11, 2009, ch. 100, 2009 N.Y. Laws. Section 1(c) of the Session Law allows the City to set the terms and conditions of the contract of sale. Act of July 11, 2009, ch. 100, § 1(c), 2009 N.Y. Laws. In conformance with the statute, the City entered into a Purchase and Sale Agreement of Specified Delinquent Tax Liens dated as of August 3, 2009, with ATF for the purchase and sale of a number of duly levied tax liens (the

---

[1] Unless otherwise noted, all statutory references are to Title 11 of the United States Code (11 U.S.C. § 101-1532).

2

"PSA"). (Case No. 10-14103, ECF No. 64, Ex. A; Case No. 11-10444, ECF No. 37, Ex. A.) Included in the sale were certain tax liens against the Debtors' Schenectady properties. ATF's purchases are evidenced by tax lien certificates recorded with the Schenectady County Clerk.

ATF filed three proofs of claim in Debtor Debenedetto's case (Case No. 10-14103, Claim Nos. 8, 9, 10) and one claim in Debtor Hebert's case (Case No. 11-10444, Claim No. 10) based on the tax liens it purchased from the City. ATF's claims all include interest at the rate of 21 percent per annum, the rate at which the City is entitled to collect on delinquent real property tax payments. Schenectady, N.Y., Code § C-12(B) (2009). The Debtors both filed objections to ATF's claims.[2]

## ARGUMENT

The Debtors and ATF disagree on the nature of the claims ATF acquired when it purchased the delinquent tax liens against the Debtors' Schenectady properties from the City. ATF asserts that it holds a "tax claim" within the meaning of § 511(a), while the Debtor argues that ATF acquired some other interest pursuant to the PSA. The Debtor contends that because ATF is not the holder of a "tax claim," ATF is not entitled to the anti-modification protection afforded by § 511(a), and its claims are subject to an interest rate calculated pursuant to the methodology set forth by the Supreme Court in *Till v. SCS Credit Corp.* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed. 787 (2004).

## DISCUSSION

**I.     Whether Private Holders of Tax Liens are Creditors Under § 511(a)**

Section 511(a) states in part:

---

[2] Debtor Debenedetto makes several arguments in support of his objection. The parties, however, requested that the court first address whether ATF is entitled to post-sale interest on its claims under relevant state law and the PSA. In an Interim Order entered June 29, 2012, incorporating an oral decision issued on May 31, 2012, the court held that ATF has the right to collect post-sale interest on the real property tax liens assigned to it by the City pursuant to the Session Law and the PSA. (Case No. 10-14103, ECF No. 70.)

> If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511(a).

There is a clear consensus among the courts construing the term "creditor" in § 511(a) that it encompasses both governmental and private entities. *In re Kizzee-Jordan*, 626 F.3d 239, 243 (5th Cir. 2010); *In re Kopec*, 473 B.R. 597, 600 (Bankr. D.N.J. 2012); *In re Meyhoefer*, 459 B.R. 167, 169-70 (Bankr. N.D.N.Y. 2011); *In re Cortner*, 400 B.R. 608, 612-13 (Bankr. S.D.Ohio 2009). These courts note that Congress opted to specifically define the term "governmental unit" very narrowly, yet chose to use the more broadly denoted term "creditor" in § 511(a). *Compare* 11 U.S.C. § 101(27) *with* § 101(5)(A). Thus, it stands to follow that Congress intended for private holders of tax claims to fall within the purview of § 511(a).

Likewise, Congress's use of the terms "tax claim" and "administrative expense tax" is also significant in determining whether private holders of tax claims were meant to be excluded from the protections of § 511(a). *Kopec*, 473 B.R. at 602-03.

> The most logical conclusion to be drawn from the use of different terms is that a "tax claim" and a "tax" are different things; otherwise, Congress would have been consistent and used the term "administrative expense tax claim." Because courts are instructed to try to give meaning to each word in a statute, the court must conclude that the scope of a "tax claim" and a "tax" are different, and that the former term is more inclusive than the latter.

*Id.* at 603.

In light of Congress's apparent intent to refrain from excluding private purchasers of tax claims from the anti-modification protections afforded under § 511(a), this court joins with other courts that have tackled this issue and finds that ATF is a creditor within § 511(a).

4

II.    **Whether a Tax Claim Follows From the Purchase of a Tax Lien**

Having found that § 511(a) applies to private entities, next it must be determined if ATF is the holder of a valid "tax claim." While "claim" is defined in the Bankruptcy Code as "a right to payment," the term "tax claim" is not defined. 11 U.S.C. § 101(5)(A). Thus, courts look to state law to determine who has a right to payment. *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1262 (10th Cir. 2012) (state law determines whether a party has a "right to payment" under the Bankruptcy Code).

In New York, there is no comprehensive statute governing the sale of delinquent tax liens to private entities. The controlling state law in the two cases before the court is the Session Law which grants the City the authority to enter into purchase and sale agreements for delinquent tax liens with private purchasers. Whether creditor ATF holds a "tax claim" within the meaning of § 511(a), thus, hinges on whether the Session Law and the accompanying PSA provide for the transfer of a tax claim or some other interest in the tax liens purchased by ATF.

Other courts deciding whether private entities that purchase delinquent tax liens from municipalities hold "tax claims" under § 511(a) have necessarily come to varying conclusions, as laws governing the sale of delinquent tax liens vary by state and, in some cases, by municipality. Although the outcomes have been different in some cases, there are certain factors that other courts confronting this issue have found especially significant in their ultimate determinations.

*The Underlying Tax Debt*

In determining whether private purchasers of tax liens hold "tax claims" following a purchase and sale transaction, courts have looked to whether payment by the private purchaser to the governmental entity originally holding the tax liens extinguishes the underlying tax debt.

5

Under this scenario, the theory is that only a lien interest would be transferred, rather than a tax claim.

Applying New Jersey law, the court in *In re Princeton Office Park, L.P.* held that the purchaser of a tax sale certificate does not hold a tax claim for purposes of § 511(a), "[r]ather, the tax sale certificate holder acquires only a lien on the property owner's real estate . . . ." 423 B.R. 795, 797 (Bankr. D.N.J. 2010). At the tax sale, the taxes are paid in full; thus, the underlying tax debt is extinguished and a new debt arises as between the property owner and the tax sale certificate holder. *Id*. at 804. As a result, the court found that the purchaser of a tax sale certificate holds only a lien interest, rather than a tax lien, because there is no underlying tax debt to support a tax lien. *Id*. at 804. It is worth noting that under the applicable New Jersey statute, the property owner can redeem a tax sale certificate by paying the amount paid for the tax sale certificate rather that the delinquent tax amount. *Id.* at 805.

Another New Jersey court, however, rejected the *In re Princeton* holding that the underlying tax debt and tax lien are severable. *In re Kopec*, 473 B.R. at 602. The *Kopec* court found that the lien transferred to the purchaser must be a tax lien supported by an underlying tax debt, rather than some statutory lien, because no lien could be transferred in the first place if there was no underlying debt to support it. *Id*. The court held further that the debt supporting the lien must be a tax debt, rather than the property owner's obligation to repay the purchaser because the property owner is under no statutory obligation to redeem the tax sale certificate. Thus, the debt could not stem from an obligation that the property owner is not required to fulfill. *Id*.

In this case, the underlying tax debt was not paid in full at the time of the purchase and sale between the City and ATF for several reasons. Section 1(a) of the Session Law states, "[t]he

6

consideration to be paid may be more or less than the face amount of the tax liens sold." Act of July 11, 2009, ch. 100, § 1(a), 2009 N.Y. Laws.  Generally, where private entities purchase delinquent tax liens, they pay less than the face value of the amount owed by the property owner, as did ATF.  Because ATF was not required to pay the total amount of the delinquent tax liens assessed against the Debtors, it follows that the underlying tax debt was not extinguished upon payment by ATF to the City for the tax sale certificates.  *See, e.g.*, *In re Kizzee-Jordan*, 626 F.3d at 244; *but cf. In re Princeton*, 423 B.R. at 801.  In addition, the Debtors are under no obligation to redeem the tax liens sold to ATF and have the option of allowing ATF to foreclose on the liens.  Act of July 11, 2009, ch. 100, § 1(f), 2009 N.Y. Laws.

In further support of the conclusion that the tax debt is not dissolved upon sale, the City may repurchase the tax liens sold to ATF.  Section 1(d) of the Session Law provides, in part, that "[t]he City of Schenectady may, at its sole option and discretion, repurchase a lien or liens on the foreclosure list from the tax lien purchaser."  Act of July 11, 2009, ch. 100, § 1(d), 2009 N.Y. Laws.  Upon repurchase, the City is then entitled to enforce the lien.  N.Y. Real Property Tax Law § 1192(6) (McKinney 2006).  The underlying tax debt could not have been extinguished at the time of the purchase and sale between the City and ATF if the City may repurchase and enforce the tax liens.

The PSA between the City and ATF also makes clear that the buyer is purchasing "specifically identified delinquent real property tax liens."  (PSA, Preface.)  The court in *Meyhoefer* found similar language significant in its determination that the tax debt was not dissolved at the time of sale.  *In re Meyhoefer*, 459 B.R. at 172.  Because specific tax liens are transferred, rather than some general interest, the tax claims arising from those liens are transferred as well.  *E.g.*, *In re Cortner*, 400 B.R. at 612.

7

*The Rights of the Original Holder and Purchaser*

Another factor courts have considered in determining whether a tax claim was transferred to the purchaser at the time of sale is the continuity of rights as between the original holder of the tax lien and the private purchaser. *E.g.*, *In re Kizzee-Jordan*, 626 F.3d at 245; *In re Meyhoefer*, 459 B.R. at 171-72; *In re Duffy*, 452 B.R. at 18; *In re Cortner*, 400 B.R. at 614. Article II of the PSA reads in part, "[s]ubject to the terms and conditions of this Agreement, the City agrees to sell to [ATF] and [ATF] agrees to purchase all right, title and interest of the City in and to the Sold Tax Liens . . . ." (PSA, Article II.) Additionally, Article II of the PSA provides that the City also transfers to ATF "all collection rights and remedies available to the City, including, without limitation, the right to foreclose any Sold Tax Lien." (PSA, Article II.) Under the PSA, ATF also acquires the same priority and precedence in collection rights that the City held prior to the sale. (PSA, Article X.) By the express terms of the PSA, the City has assigned substantially all of its rights and remedies to ATF, with one narrow exception.

Pursuant to Section 1(f) of the Session Law, the purchaser may not avail itself of the *in rem* foreclosure proceedings available to the City in foreclosing on delinquent tax liens. Act of July 11, 2009, ch. 100, § 1(f), 2009 N.Y. Laws. However, the court finds that this difference alone is insufficient to alter the nature of rights transferred to the purchaser of the tax liens. *E.g.*, *In re Meyhoefer*, 459 B.R. at 171-72. The court in *Meyhoefer* noted that:

> Due to the summary nature of statutory foreclosure that requires strict adherence to the specified procedures in order to comport with due process and protect the rights of real property owners, it is understandable that the City chose not to make it available to private parties who purchase tax liens.

459 B.R. at 172. This court agrees. This sole limitation on remedies available to the purchaser does not significantly change the nature of the rights and remedies transferred to ATF under the PSA.

8

The court concludes that ATF holds a "tax claim" pursuant to § 511(a) because the underlying tax debts owed by Debtors were not dissolved at the time of ATF's payment to the City for the tax liens, and ATF, as the purchaser of the tax liens, enjoys substantially the same rights held by the City prior to sale.

*The Applicable Rate of Interest*

ATF as "a creditor" holding a valid "tax claim" within the meaning of § 511(a) is entitled to the applicable nonbankruptcy rate of interest determined by state law. Section C-12(B) of the City Code of the City of Schenectady provides for interest at 21 percent annum for delinquent tax payments. Schenectady, N.Y., Code § C-12(B) (2009). Thus, under the relevant City of Schenectady statutory provision, ATF is entitled to 21 percent interest on its secured claims. Applying this interest rate to ATF's claims also comports with the controlling New York law in this case, the Session Law, which explicitly provides, "the sale of a tax lien pursuant to this act shall not operate to . . . change the otherwise applicable interest rate." Act of July 11, 2009, ch. 100, § 1(e), 2009 N.Y. Laws.

## CONCLUSION

For the reasons stated above, the Debtors' objections to the claims filed by creditor ATF are overruled.

It is so ORDERED.

Dated: July 23, 2013                              /s/ Robert E. Littlefield, Jr.
      Albany, New York                        Hon. Robert E. Littlefield, Jr.
                                                  Chief United States Bankruptcy Judge